UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BOBBY LANHAM,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:15-cv-50
Barrett, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff Bobby Lanham brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's statement of errors (Doc. 10), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply memorandum (Doc. 17).

I. Procedural Background

Plaintiff protectively filed his application for DIB in January 2011, alleging disability since September 22, 2010 due to vertigo and deafness in his left ear. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Larry A. Temin. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On July 22, 2013, the ALJ issued a decision denying plaintiff's DIB application. On November 28, 2014, the Appeals Council denied plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] met the insured status requirements for disability insurance benefits on his alleged onset date of September 22, 2010, and continues to meet them through September 30, 2016.
>
> 2. There is no evidence that the [plaintiff] has engaged in any substantial gainful activity since his alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: Meniere's disease with vertigo and left-sided hearing loss (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. Careful consideration of the entire record shows that the [plaintiff] has the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels but with the following nonexertional limitations: He should never climb ladders, ropes, or scaffolds. He can only occasionally climb ramps and stairs. He should never use vibratory tools or power tools. He should never work at unprotected heights or around hazardous machinery. He should not be exposed to loud background noise or to a loud noise intensity level. He should not work in an environment where communication is an integral or significant part of the job.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]

---

[1] Plaintiff's past relevant work was as a forklift mechanic, bobcat operator, sawmill worker, and lumber handler. (Tr. 19-20, 55-56).

3

7. The [plaintiff] was born [in] . . . 1966 and was 44 years old on his alleged onset date, and considered to be a younger individual age 18-49 (20 CFR 404.1563).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 22, 2010, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 16-21).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of 1,240,000 national jobs at the medium and light exertional levels such as a bagger, hand packer, and light cleaner/housekeeper. (Tr. 20, 57-58).

4

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Medical Evidence**

Plaintiff began seeing internist Paul Chandler, M.D., in June 2010 for vertigo, dizziness, balance problems, and hearing loss. (Tr. 255). On June 29, 2010, otolaryngologist Richard DeVore, M.D., performed an audiogram. The audiogram showed normal hearing in the right ear with 100% word discrimination, but complete hearing loss in plaintiff's left ear. (Tr. 247). Dr. DeVore indicated that plaintiff presented to the exam "with a 4 week history of sudden left sided total hearing loss. Forty-eight hours after onset of hearing loss he had true spinning vertigo which eventually resolved after 2 days." (*Id.*).

On October 8, 2010, Dr. Chandler diagnosed plaintiff with presyncope and vertigo and recommended short term disability. (Tr. 239). Dr. Chandler signed a work certificate indicating that plaintiff would be able to return to work on November 22, 2010. (Tr. 243). On October 29,

5

2010, Dr. Chandler indicated that plaintiff was still experiencing vertigo. (Tr. 237). On January 26, 2011, Dr. Chandler noted that plaintiff was still dizzy and experiencing presyncope, with "no resolution since initial episode." (Tr. 236).

Dr. Chandler referred plaintiff to otolaryngologist Rolando Go, M.D. (*See* Tr. 256-57). At plaintiff's initial appointment on September 23, 2010, Dr. Go reported that plaintiff had been experiencing "mild dizziness." (Tr. 257). On October 7, 2010, Dr. Go indicated that plaintiff had "[n]o more dizziness." (*Id.*). Dr. Go indicated that plaintiff's MRI was "OK." (*See* Tr. 257-58). On December 9, 2010, Dr. Go noted that plaintiff had "[n]o more dizziness." (Tr. 260). On December 14, 2010, Dr. Go indicated that plaintiff had "mild" dizziness that "comes and goes." (*Id.*). On February 17, 2011, Dr. Go stated in a letter that plaintiff has "mild dizziness that comes and goes." (Tr. 262). In a letter dated August 17, 2011, Dr. Go indicated that when he was treating plaintiff, "he still had dizziness which eventually abated and would just occur on and off occasionally." (Tr. 263).

Plaintiff began seeing Jennifer Lager, D.O., a family physician, on October 14, 2011 for dizziness, nausea, and ear ringing. (Tr. 266, 298). On neurological/psychiatric examination, plaintiff was positive for dizziness, focal weakness, and "psychiatric symptoms." (Tr. 267, 284). Dr. Lager diagnosed plaintiff with Ménière's disease. (Tr. 266-67, 300). Dr. Lager prescribed meclizine to treat plaintiff's dizziness. (*See* Tr. 267). On December 9, 2011, Dr. Lager noted that plaintiff "states meclizine for his Meniere's is working." (Tr. 295). On February 10, 2012, Dr. Lager indicated that plaintiff was still experiencing dizziness and that his Ménière's disease may be worse from increased blood pressure. (*See* Tr. 290-91). On March 12, 2012, Dr. Lager noted that plaintiff was experiencing vertigo and nighttime ringing in his ears. (Tr. 287-88). In a

6

letter dated March 12, 2012, Dr. Lager stated without elaboration that plaintiff's Ménière's disease "affects his ability to work." (Tr. 286). On August 2, 2012, Dr. Lager indicated that plaintiff "describes [his dizziness] as . . . floating, light-headed and spinning. Relieving factors include medication. Associated symptoms include ear ache, hearing loss, loss of vision, nausea and weakness. Pertinent negatives include headache, neck stiffness, slurred speech or vomiting." (Tr. 281). Dr. Lager noted that plaintiff was positive for tinnitus, ear pain, and psychiatric symptoms. (Tr. 282).

On May 29, 2013, Dr. Lager completed a Ménière's Disease Medical Source Statement. (Tr. 301). Dr. Lager indicated that plaintiff has Ménière's disease, a history of frequent attacks of balance disturbance, and progressive hearing loss. (*Id.*). Dr. Lager noted that the following symptoms were associated with plaintiff's attacks of Ménière's disease: vertigo, nausea/vomiting, sensitivity to noise, mood changes, mental confusion/inability to concentrate, and fatigue/exhaustion. (Tr. 302). Dr. Lager reported that plaintiff has four attacks per month, the length of his attacks varies, he does not always have a warning of an impending attack, and he cannot always take safety precautions when he feels an attack coming on. Dr. Lager indicated there are no factors that precipitated his attacks, but his attacks are made worse by noise and moving around. After an attack, plaintiff experiences confusion, exhaustion, and irritability. (*Id.*). Dr. Lager opined that plaintiff is "incapable of even 'low stress' work" and would be precluded from performing even basic work activities when he is having an attack. (Tr. 303). Dr. Lager opined that plaintiff would be "off task" while working 25% of the day or more and would miss more than four days of work a month. (Tr. 304).

7

### E. Specific Errors

Plaintiff contends the ALJ erred by giving only "some weight" to the opinion of his treating physician, Dr. Lager, who opined that plaintiff was "incapable of even 'low stress' work," would be "off task" while working 25% of the day or more, and would miss more than four days of work each month. (Doc. 10). Plaintiff argues the ALJ failed to follow Social Security regulations by giving less than controlling weight to the opinion of his long-time treating physician. (Doc. 10 at 5). Plaintiff contends the ALJ's reliance on plaintiff's daily activities to discount Dr. Lager's opinion is not persuasive because being able to read, watch television, and groom himself does not equate to being able to perform "a full range of work at all exertional levels." (*Id.* at 6). Plaintiff argues that the "ALJ failed to set forth comprehensive and cogent reasons for [giving] less than controlling weight or even deference to the opinion of Dr. Lager." (*Id.* at 7).

The Commissioner responds that the ALJ gave good reasons for finding that Dr. Lager's opinion was not entitled to controlling weight, including the fact that "Dr. Lager's opinion was inconsistent with the record." (Doc. 15 at 3). The Commissioner argues that plaintiff's medical record shows that plaintiff's vertigo was "mild and intermittent" and that Dr. Lager's own treatment notes state that medication prescribed to treat his vertigo "is working." (*Id.* at 3-4). The Commissioner contends that Dr. Lager treated plaintiff with the same medicines at a constant dosage throughout his treatment history, which "indicates that his symptoms were stable and not overly troublesome." (*Id.* at 4). The Commissioner argues that nothing in Dr. Lager's treatment records supports her opinion that plaintiff would be off task 25% of the day or would miss four days of work per month. (*Id.* at 4-5). The Commissioner contends that the ALJ

8

reasonably considered plaintiff's activities of daily living to conclude that his allegations of total disability were not entirely credible. (*Id.* at 5).

In reply, plaintiff argues the ALJ failed to take into account the progressive nature of Ménière's disease. He contends the ALJ erred by relying on treatment records from the period before plaintiff began seeing Dr. Lager to find that his vertigo was mild and intermittent. (*See* Doc. 17 at 1-3).

The applicable regulation sets forth three types of acceptable medical sources upon which an ALJ may rely: treating source, non-treating source, and non-examining source. 20 C.F.R. § 404.1527. A treating source opinion on the nature and severity of a claimant's impairments is generally entitled to the most weight, and the Social Security Administration must give "good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). "With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (internal citations omitted).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The

9

treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion).

Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 (1996)). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 544 (quoting *Wilson*, 378 F.3d at 544).

The ALJ determined that Dr. Lager's May 2013 assessment of plaintiff's limitations "deserves some weight, but the evidence does not support the degree of impairment implied by Dr. Lager." (Tr. 19). The ALJ concluded that Dr. Lager's own treatment records do not support her conclusion that plaintiff would be off task 25% of the time or more, would miss work more than 4 days a month, and would have mood changes, mental confusion, or fatigue. The ALJ noted that Dr. Lager's treatment notes indicate that "medications relieve his symptoms." (*Id.*). The ALJ stated there was no evidence in the record to support Dr. Lager's assessment as the medical evidence indicated plaintiff's vertigo is "mild" and "intermittent." (*Id.*). Instead of giving the most weight to the opinion of plaintiff's treating physician, the ALJ gave "great weight" to the assessments of the non-examining state agency doctors who found that plaintiff is capable of performing work at all exertional levels but should never climb ladders, ropes, and scaffolds, and should avoid concentrated exposure to hazards and unprotected heights because of his occasional dizziness.

Substantial evidence does not support the ALJ's decision to give Dr. Lager's opinion only "some" weight because the ALJ failed to consider the episodic nature of plaintiff's Ménière's disease in assessing the treating physician's opinion. The Commissioner's regulations

11

explain: "Ménière's disease is characterized by paroxysmal attacks of vertigo, tinnitus, and fluctuating hearing loss. Remissions are unpredictable and irregular, but may be longlasting; hence, the severity of impairment is best determined after prolonged observation and serial reexaminations." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 2.00(C)(2). In evaluating an episodic disease like Ménière's disease, the ALJ must consider "the frequency and duration of the [disease's] exacerbations, the length of remissions, and the evidence of any permanent disabilities." *Sharp v. Barnhart*, 152 F. App'x 503, 508-510 (6th Cir. 2005) (quoting *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990) (discussing requirement that ALJ give good reasons for rejecting treating physicians' opinions, "particularly with respect to episodic illnesses like" the Ménière's disease and vertigo afflicting the plaintiff).

The course of plaintiff's Ménière's disease over "prolonged observation and serial reexaminations" is not inconsistent with Dr. Lager's conclusions about the severity of and limitations from plaintiff's Ménière's disease. Starting with his initial episodes of vertigo, dizziness, balance problems, and hearing loss in June 2010, plaintiff's symptoms fluctuated over a period of years. While Dr. Chandler initially opined that plaintiff improved and was expected to return to work in November 2010, Dr. Chandler's January 2011 treatment notes reflect that contrary to his expectation plaintiff was still dizzy and experiencing presyncope with "no resolution since initial episode" in June 2010. (Tr. 236, 243). Dr. Go indicated that plaintiff was experiencing dizziness on September 23, 2010, had "no more dizziness" on October 7 and December 9, 2010, but again had dizziness that "comes and goes" on December 14, 2010. (Tr. 257, 260). Dr. Lager noted that plaintiff continued to experience dizziness, nausea, and ear ringing in October 2011. (Tr. 266, 298). Although Dr. Lager noted in December 2011 that

12

plaintiff's symptoms improved with meclizine, plaintiff continued to experience symptoms of dizziness, vertigo, and ear ringing from his Ménière's disease in February, March, and August 2012. (Tr. 281, 287-88, 290-91, 295). Dr. Lager's August 2012 notes indicate that medication was a "relieving factor" for plaintiff's dizziness, but she did not state that meclizine eliminated plaintiff's symptoms. (Tr. 281). At that visit, Dr. Lager described plaintiff's dizziness as "floating, light-headed and spinning," with associated symptoms of ear ache, hearing loss, loss of vision, nausea and weakness. (Tr. 281). The record indicates that while plaintiff's symptoms of dizziness and vertigo associated with his Ménière's disease fluctuated, they never resolved completely. This is consistent with the nature of Ménière's disease as an episodic, progressive condition. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 2.00(C)(2). This Court's decision in *Spencer v. Astrue*, No. 3:10-cv-00365, 2012 WL 404896 (S.D. Ohio Feb. 8, 2012) (Report and Recommendations) (Ovington, M.J.), *adopted*, 2012 WL 966053 (S.D. Ohio Mar. 21, 2012) (Rice, J.), is instructive. In that case, the Court found:

> Rather than evaluating [the medical] opinions in light of the sudden, temporary, or fluctuating symptoms indicative of Meniere's disease, generally, and Plaintiff's episodic symptoms, and by failing to recognize that Plaintiff could have unpredictable, irregular—even longstanding—remissions, the ALJ improperly selected those portions of Plaintiff's medical record that supported a non-disability determination without considering that such evidence of improvement was consistent with [medical] opinions [that plaintiff's Ménière's disease was progressively "debilitating"]. This constituted error because an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports [his] position."

*Id.* at *3-*6, *10 (quoting *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)). *See also Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."). Here, as in *Spencer*, the ALJ's references to occasional episodes of improvement in plaintiff's

13

vertigo do "not constitute substantial evidence or a legally valid reason . . . for the ALJ to reject [Dr. Lager's] opinion[]." *Spencer*, 2012 WL 404896, at *11. *See also Sharp*, 152 F. App'x at 509 (given episodic nature of Ménière's disease, ALJ erred by failing to adequately explain why treating physician's opinion regarding expected absences from work due to vertigo should not be treated as a valid medical opinion regarding "the frequency and duration of the disease's exacerbations"); *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990) ("[I]n evaluating multiple sclerosis, or any other episodic disease, consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities."); *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981) ("In conditions which are episodic in character, such as multiple sclerosis or myasthenia gravis, consideration should be given to frequency and duration of exacerbations, length of remissions, and permanent residuals.").

Further, the ALJ's references to plaintiff's daily activities do not constitute substantial evidence to discount Dr. Lager's opinion. It is true that an ALJ may consider a plaintiff's household and social activities in evaluating the plaintiff's credibility concerning the severity of his condition. *Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990). However, the evidence concerning the extent of plaintiff's activities when he is not having a vertigo attack are not inconsistent with Dr. Lager's opinion concerning the frequency of plaintiff's vertigo attacks and the limitations that those attacks cause. Again, in discussing plaintiff's daily activities, the ALJ failed to consider the episodic nature of plaintiff's Ménière's disease and the effect of vertigo attacks on plaintiff's ability to engage in his normal daily activities.

14

Moreover, substantial evidence does not support the ALJ's decision to disregard Dr. Lager's opinion based on a lack of "objective evidence" to support her findings that plaintiff would need to be off task 25% of the workday and miss 4 days of work a month. (Tr. 19). The Sixth Circuit has explained:

> As a general matter, doctors in good faith surely may rely on what their patients tell them have been their symptoms between one visit and another. And surely they may make reasoned assessments (again as a general matter) about the seriousness of a disease based on an objectively-supported diagnosis of the disease, the symptoms reported to them by their patients, the progression of the disease and their medical understanding of the disease.

*Sharp*, 152 F. App'x at 508-09 (citing 20 C.F.R. § 404.1528). *See also Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) (finding that a treating doctor's estimate concerning the frequency of epileptic seizures should have been credited by the ALJ even though the disability-benefits applicant had not visited a doctor each time a seizure had occurred); *Davis-Atkinson v. Barnhart*, 87 F. App'x 766 (2d Cir. 2004) (finding that upon remand the Commissioner needed to reconsider in greater detail, among other things, a treating physician's opinion—based on patient visits occurring every three months—that the disability-benefits applicant suffered from "non-epileptic seizures one to two times a day"). Here plaintiff saw Dr. Lager five times over the course of a year. (Tr. 266-67, 281-82, 284, 287-88, 290-91, 295, 298). Dr. Lager's diagnosis of Ménière's disease was supported by plaintiff's symptoms as reported by Dr. Lager, the history of his condition as noted by Drs. Chandler and Go, and his audiogram results. (Tr. 236-37, 239, 247, 255-58, 260, 262-63). At the majority of his visits with these treating physicians, plaintiff reported symptoms of vertigo. Given the episodic nature of Ménière's disease, a plaintiff need not seek treatment for every attack in order for an ALJ to credit a treating physician's opinion concerning the frequency of attacks. *See Clark v. Barnhart*, 64 F. App'x 688, 691-92 (10th Cir.

15

2003) (holding that (1) ALJ's rejection of plaintiff's complaints based on the frequency of treatments by physicians was not supported when plaintiff had seen her treating physicians ten times over a year and a half and complained of fatigue during those visits, and (2) plaintiff's seeking treatment only when her multiple sclerosis flared up was consistent with the episodic nature of the illness). Accordingly, the Court determines that the ALJ has failed to provide "good reasons" for not giving Dr. Lager's opinion substantially more weight. *See Cole*, 661 F.3d at 937; *Wilson*, 378 F.3d at 544. Plaintiff's assignment of error should be sustained.

### III. This matter should be reversed and remanded for further proceedings.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Given the ALJ's failure to satisfy the procedural requirements for rejecting a treating physician's opinion as set forth in § 404.1527, the appropriate course is to remand for further factfinding, the opportunity to present additional evidence, and consideration of the episodic nature of plaintiff's Ménière's disease and vertigo. *See Sharp*, 152 F. App'x at 510-11.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Date: 12/21/15

Karen L. Litkovitz
United States Magistrate Judge

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BOBBY LANHAM,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:15-cv-50
Barrett, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).